**LITE DEPALMA GREENBERG & RIVAS, LLC**
Bruce D. Greenberg, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0211

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
Wendy J. Harrison, Esq.
Guy A. Hanson, Esq.
Dana L. Hooper, Esq.
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012-3311
Phone: (602) 274-1100
Fax: (602) 274-1199

Attorneys for Plaintiffs

RECEIVED
MAR 27 2007
AT 8:30
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Paul Richard and Jennifer Richard, husband and wife, Charles Kohler and Alicia Kohler, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Menu Foods Income Fund, a Canadian open-ended trust, Menu Foods Limited, a Canadian corporation, Menu Foods Holdings, Inc., a Delaware corporation, Menu Foods, Inc., a New Jersey corporation, Menu Foods Midwest corporation, a Delaware corporation, Menu Foods South Dakota, Inc., a Delaware corporation, ABC partnerships, XYZ corporations,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Paul Richard and Jennifer Richard and Alicia Kohler, for their class action complaint, allege as follows:

## NATURE OF THE ACTION

1.  This is a class action seeking recovery for damages caused by Defendants' poisonous pet food. Defendants' food injured or killed pets in Michigan, Indiana and throughout the United States. According to media reports, testing revealed that Defendants' adulterated pet food may have killed as many as one out of every six who ate it.

2.  Plaintiffs Paul Richard and Jennifer Richard owned a pet cat, Teddy, who was killed by Defendants' contaminated food. Plaintiff Alicia Kohler owned a cat, Coco, who was also killed by Defendants' food. These Plaintiffs bring this action individually and on behalf of similarly situated persons throughout the United States whose pets were harmed or killed by Defendants' products. Pursuant Rule 23, Federal Rules of Civil Procedure, Plaintiffs assert claims on behalf of a class consisting of all dog or cat owners in the United States who purchased "cuts and gravy" style wet food that was manufactured and recalled by Defendants, and whose pets became sick or died after eating Defendants' pet food.

3.  Like others in the proposed class, Plaintiffs bought pet food manufactured and distributed by Defendants, believing it was safe for their pets to eat.

4.  The food was not safe. It was lethal. Within days of eating it, Plaintiffs' pets experienced massive renal failure and died.

5.  Plaintiffs are members of a rapidly growing group of pet owners who have been damaged by Defendants' unsafe pet food. Based on news reports,

pet cats and dogs across the United States have been sickened or killed after eating Defendants' pet food products.

## THE PARTIES

6.  At all relevant times, Plaintiffs Paul Richard and Jennifer Richard resided in Hillman, Michigan. Plaintiff Alicia Kohler resided in Michigan City, Indiana.

7.  The Defendants responsible for producing the adulterated pet food are business entities that reside in Canada and the United States. At all relevant times, Defendant Menu Foods Income Fund was and is an unincorporated open-ended trust established under the laws of Ontario, Canada. Through an arrangement of partnerships and corporations, Menu Foods Income Fund owns and operates Defendant Menu Foods Limited, a corporation incorporated under the laws of Ontario, Canada.

8.  Menu Foods Income Fund owns and operates corporations in the United States. Defendant Menu Foods Holdings, Inc. is a Delaware corporation, and a wholly-owned subsidiary of Menu Foods Limited (in Canada). Defendants Menu Foods, Inc., Menu Foods Midwest Corporation and Menu Foods South Dakota, Inc. are wholly-owned subsidiaries of Menu Foods Holdings, Inc. Menu Foods, Inc. is a New Jersey corporation with its principal place of business in Pennsauken, New Jersey. Menu Foods Midwest Corporation is a Delaware corporation with its principal place of business in Emporia, Kansas. Menu Foods South Dakota, Inc. is a Delaware corporation with its principal place of business

in Sioux City, South Dakota. In this Complaint, the Menu Foods Defendants in Canada and the United States are referred to collectively as "Menu" or "Defendants."

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005).

10. Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b)(2) as to the American-based Defendants because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. Defendants manufactured and distributed recalled "cuts and gravy" style pet food in this district. Venue is proper as to the Canadian-based Defendants under 28 U.S.C. § 1391(d).

## GENERAL ALLEGATIONS

### A. Menu's Operations

11. Menu manufactures wet pet food, packages it in cans and pouches, and sells it either to retail customers as private-label products or to brand-owners as contract manufactured pet food. Menu claims it is the leading manufacturer of wet pet food in North America.

12. "Private label" products are pet foods that are commissioned, marketed and owned by a retailer as opposed to a manufacturer. Menu claims it supplies all or a "meaningful portion" of the private-label wet pet food products

sold by such retailers as Kroger Co., Safeway, Wal-Mart Stores, PetSmart, Inc. and Pet Valu, Inc.

13. "Contract manufactured" products are pet foods manufactured for a pet food brand-owner, such as Iams or Purina. Menu claims it is a contract manufacturer for five of the top six branded pet food companies in North America.

14. As private label or contract manufactured products, Menu manufactures and distributes wet cat food under such labels as America's Choice, Authority, Best Choice, Companion, Compliments, Eukanuba, Fine Feline Cat, Iams, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Science Diet, Total Pet and Winn Dixie.

15. As private label or contract manufactured products, Menu manufactures and distributes wet dog food under such labels as America's Choice, Authority, Award, Big Red, Companion, Eukanuba, Food Lion, Great Choice, Iams, Nutriplan, Ol' Roy, Pet Essentials, President's Choice, Priority, Publix, Total Pet, Western Family and Winn Dixie.

16. Menu manufactures and distributes its wet pet food products from facilities in Pennsauken, New Jersey, Emporia, Kansas, North Sioux City, South Dakota, and Streetsville, Ontario.

17. Menu boasts that its manufacturing facilities are able to manufacture 1000 cans of wet pet food per minute or 1100 pouches of wet pet food per minute. Collectively, Menu's plants are capable of producing more than one billion containers of wet pet food per year.

18.  Menu intended that its pet food products be distributed and offered for sale throughout the United States, including Indiana, Michigan and New Jersey. Menu promoted and advertised its pet food products throughout the United States, including Indiana, Michigan and New Jersey.

19.  Cat and dog owners love their pets. Throughout the United States, owners buy products manufactured by Menu and feed them to their pets because they believe the food is nutritious and safe to eat.

**B. Menu's Manufacture and Distribution of Contaminated Pet Food**

20.  On March 16, 2007, Menu announced it was recalling approximately 60 million cans and pouches of contaminated "cuts and gravy" style cat and dog food. Menu recalled wet pet food marketed under at least 90 labels in the United States between December 3, 2006 and March 6, 2007. Menu euphemistically characterized the recall as a "precautionary" measure and said it was taking these products off the market "out of an abundance of caution."

21.  Menu later expanded the recall to all "cuts and gravy" style pet food products, regardless of the manufacture date.

22.  Menu told the Food and Drug Administration ("FDA") it began receiving complaints on February 20, 2007 that pet dogs and cats who ate its wet "cuts and gravy" pet food were becoming sick and dying. Menu, however, has not disclosed the contents of the complaints or the dates they were received. One Canadian media source has reported that Menu began receiving reports of concerns about its "cuts and gravy" pet food as early as December 2006.

23. On February 27, 2007, Menu began testing its food by feeding it to cats, dogs and other unidentified animal species. Several of the test animals died. Menu has admitted that test animals who were fed the suspicious food began dying as early as March 2, 2007.

24. Nevertheless, Menu waited until March 16, 2007 before recalling any of the adulterated food. Menu made the recall announcement on a Friday afternoon at 3:51 p.m. ET, ten minutes before close of trading on the New York Stock Exchange and Toronto Stock Exchange.

25. The impact of the recall announcement was immediate. Through the following weekend, Menu's switchboard was swamped with some 47,000 calls as pet owners tried to get more information. Owners called their veterinary clinics and took their pets in for examinations. The New York Times reported: "Around the country, worried owners of dogs and cats kept veterinarians' offices and pet stores busy fielding calls yesterday, concerned that the food might have sickened their pets." The FDA described the effect on pet owners who learned they had fed their pets poisoned food: "the growing crisis is an emotional one."

26. Menu could not determine why its food was sickening and killing cats and dogs. However, testing by New York state's food laboratory discovered aminopterin in Menu's "cuts and gravy" style pet food. Aminopterin is a compound used in other countries as rat poison.

27. Although Menu knew its "cuts and gravy" style food was unsafe for pets, it never closed the facility or facilities that produced the contaminated products.

## ALLEGATIONS REGARDING PLAINTIFFS

**(A)    Plaintiffs Paul and Jennifer Richard**

28.    On March 2, 2007, Plaintiffs Paul and Jennifer Richard bought several pouches of Special Kitty cuts and gravy style cat food from a Wal-Mart store near their home in Hillman, Michigan. The food was for their cat, Teddy.

29.    On March 3, 2007, Teddy, began showing signs of illness after eating some of the Special Kitty food. The symptoms continued over the next two days and Plaintiffs took Teddy to their veterinarian on March 5, 2007.

30.    The veterinarian told Plaintiffs that Teddy's kidneys had grown to three times their normal size and that he was experiencing renal failure. On March 6, 2007, Teddy was put to sleep.

**(B)    Plaintiff Alicia Kohler**

31.    On March 5 or 6, 2007, Plaintiff Alicia Kohler bought cans of "cuts and gravy" style Meijer Main Choice cat food at a Meijer store near her home in Michigan City, Indiana. The food was for Ms. Kohler's pet cat, Coco.

32.    Within a day of eating the Meijer Main Choice, Coco became sick. She became lethargic, would not eat, and began vomiting. When the symptoms worsened, Ms. Kohler took Coco to her veterinarian on March 9, 2007. After a blood workup, the veterinarian told Ms. Kohler that Coco was experiencing renal failure. Coco was put to sleep later that day.

33.    On March 16, 2007, Ms. Kohler learned of Menu's recall on the evening news. Through the weekend, she tried to contact Menu, but repeatedly received a busy signal.

34. Plaintiffs bought contaminated pet food and fed it to their pets before March 16, 2007. Plaintiffs' pets were dead by the time Menu began recalling its tainted food.

## CLASS ACTION ALLEGATIONS

35. Plaintiffs seek certification of their warranty, strict liability and negligence claims under Rules 23(a) and (b)(3) and/or (b)(1)(B), Federal Rules of Civil Procedure. Plaintiffs also seek certification of a punitive damages claim under Rule 23.

36. The class satisfies the requirements of Rule 23(a). The members of the proposed class are so numerous that joinder is impracticable. The March 16, 2007 recall numbered approximately 60 million cans or pouches. Before Menu's belated recall, its tainted pet food was consumed by pets across America. The death toll currently numbers in the hundreds, and veterinarians agree that the number of pets sickened or killed by the bad food will increase precipitously.

37. Plaintiffs' experiences and resulting claims are typical of class members'. Both Plaintiffs and class members bought adulterated pet food manufactured and distributed by Menu. Both Plaintiffs and class members suffered the same kind of damages when their pets were sickened or killed by Menu's food.

38. The claims involve questions of law and fact common to Plaintiffs and all members of the class. These questions include:

(a) whether Menu marketed and distributed contaminated pet food;

(b) whether express warranties apply to the sale of pet food to consumers, and whether Menu's sale of contaminated pet food breached express warranties;

(c) whether the contaminated pet food sold by Menu was not reasonably fit, suitable or safe for its intended purpose;

(d) whether the allegedly poisonous pet food was altered in any way after leaving Menu's control;

(e) whether the contamination in the pet food was or could be known to the ordinary consumer or user;

(f) whether Menu's poisonous pet food is egregiously unsafe or ultra-hazardous to pets;

(g) whether the tainted pet food has any usefulness as pet food;

(h) Whether Menu made representations and promises that its pet food was safe for pets to consume;

(i) whether Menu's pet food conformed to representations and promises regarding the safety of its food; and

(j) whether Menu's failure to warn about or recall pet food it knew posed a substantial risk of serious harm to pets supports an award of punitive damages.

39. Plaintiffs have no interests antagonistic to those of the class, and have retained attorneys who are knowledgeable in class action litigation. The interests of Class Members are therefore fairly and adequately protected.

40. This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

41. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Although the loss of or injury to class members pets is emotionally devastating, the amount of objectively quantifiable damages suffered by pet owners is relatively small. Plaintiffs and class members therefore would find it difficult to litigate individual claims against a well-heeled corporate giant. The expense and burden of individual litigation makes it impossible for members of the class to individually redress the wrongs done to them.

## CAUSES OF ACTION

### COUNT I
### (PRODUCT LIABILITY UNDER N.J.S.A. 2A:58C-1 *et. seq.*)

42. Plaintiffs incorporate the allegations contained above.

43. Menu is a manufacturer or seller of a product that caused harm to Plaintiffs and class members.

44. Menu manufactured, distributed, marketed and sold pet food products containing contaminants that were toxic to pets. Menu's contaminated pet food was not reasonably fit, suitable or safe for its intended purpose, as feeding the food to dogs and cats subjected them to imminent harm or death.

45. Menu's adulterated pet food was egregiously unsafe and had no usefulness as pet food.

46. The pet food products were contaminated, defective and unreasonably dangerous when they left Menu's control.

47. Plaintiffs and class members did not and could not know the Menu Foods pet food they purchased and fed to their pets was contaminated and unsafe.

48. The pet food products were not altered or misused by Plaintiffs, class members or any third party.

49. The unfit and unsafe adulterated pet food products caused Plaintiffs' and class members' pets who ate it to become sick or die.

50. Menu's unfit and unsafe pet food products have caused Plaintiffs and class members damages, including loss of their pets, past and future veterinary expenses, and other damages yet to be ascertained.

51. Menu knew that pet owners throughout the United States were feeding its pet food products to their pets every day. By the beginning of March 2007, and likely earlier, Menu knew its pet food was contaminated and was toxic and potentially fatal to cats and dogs who ate it. Menu knew its inaction would result in cats and dogs across the United States becoming sick or dying as their kidneys failed, would cause pet owners to spend money on veterinary care, and would cause emotional devastation as pet owners helplessly watched their pets sickened or killed. Under the circumstances, Menu's conduct was egregious and outrageous, and warrants an award of punitive damages for Plaintiffs and the class.

## COUNT II
### (BREACH OF EXPRESS WARRANTY)

52. Plaintiffs incorporate the allegations contained above.

53. The contaminated pet food products manufactured and marketed by Menu that harmed Plaintiffs' and class members' pets are "goods." Menu is a "seller" of goods and a "merchant." Plaintiffs and class members are "consumers" and "buyers."

54. Menu made representations and promises that its pet food was safe for pets to consume. These representations are express warranties or obligations because Plaintiffs' and class members' purchase of Menu's pet food products were based in part on them.

55. The poisoned pet food did not conform to Menu's representations and promises. Menu has therefore breached express warranties and obligations to Plaintiffs and class members.

56. Plaintiffs and class members have suffered damages resulting from the breach of express warranties.

## COUNT III
### (NEW JERSEY CONSUMER FRAUD)

57. Plaintiffs incorporate the allegations contained above.

58. The pet food manufactured by Menu constitutes merchandise under N.J. Stat. Ann. §§ 56:8-1 *et seq*.

59. Menu made representations and promises that its pet food was safe for pets to consume.

60. Menu's pet food did not conform with representations and promises regarding the safety of its food. Menu failed to immediately recall or remove unsafe food products it knew or had reason to know were unsafe.

61. Menu's actions constitute deception, use of deceptive acts or practice, fraud, misrepresentation and concealing, suppressing and omitting material facts in connection with the sale and advertisement of merchandise.

62. Menu intended Plaintiffs to rely of its deception, deceptive acts and practices, fraud, misrepresentations and concealment, suppression and/or omission of material facts when selling Plaintiffs the pet food.

63. As a result of Menu's deception, deceptive acts and practices, fraud, misrepresentations and concealment, suppression and/or omission of material facts when selling Plaintiffs the pet food, Plaintiffs suffered ascertainable damages.

64. Plaintiffs are entitled to treble damages under N.J. Stat. Ann. §§ 56:8-1 *et seq.*

65. Plaintiffs are entitled to punitive damages under N.J. Stat. Ann. §§ 56:8-1 *et seq.* as Menu's actions were reckless, wanton, egregious and outrageous.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the class, request the following relief:

(a) An order certifying the class as defined above;

(b) An award of damages including, but not limited to, the cost of contaminated food, veterinarian bills and expenses associated with the examination, testing, diagnosis, treatment and euthanization of

animals poisoned by Menu's tainted food, pet disposal costs, and the value of the diseased pet;

(c) Treble damages;

(d) Punitive damages awarded on a class-wide basis;

(e) Pre-judgment and post-judgment interest;

(f) Plaintiffs' attorneys' fees and costs incurred in prosecuting this action; and

(g) Such other relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims and issues.

Dated: March 27, 2007

By: _____
Allyn Z. Lite
Bruce D. Greenberg, Esq.
**LITE DEPALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Facsimile: (973) 623-0211

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
Wendy J. Harrison, Esq.
Guy A. Hanson, Esq.
Dana L. Hooper, Esq.
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012

Attorneys for Plaintiffs

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is not the subject of any pending action.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated: March 27, 2007

By: _____
Allyn Z. Lite